IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADAPTIVE DIGITAL<br>TECHNOLOGIES, INC. | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | NO. 15-4062 |
| KURTZ, *et al.* | : | |

MEMORANDUM

**KEARNEY, J.**                                                                                                        **September 22, 2015**

      Resolving difficult trade secret and stock ownership issues between employers and their former senior employees requires the parties' mature understanding of the binding nature of their promises regardless of buyers' remorse. Breaching settlement obligations is not leverage to renegotiate and may result in damages beyond the employment relationship. Preparing for trial and as a matter of Pennsylvania law on a summary judgment record, we now enforce obligations in a negotiated settlement agreement including the stock redemption while the employer enforces its restrictive protections.

      Plaintiff Adaptive Digital Technologies, Inc. ("ADT") commenced this action seeking a declaration Defendants Scott Kurtz ("Kurtz") and his business DSP Soundware, LLC ("DSP") breached restrictive covenants contained in a settlement agreement between the parties, and a declaration Kurtz and DSP forfeited their right to all payments under the settlement agreement. Kurtz and DSP filed a counterclaim against ADT and its President and majority shareholder Brian M. McCarthy, Sr. ("McCarthy") seeking a declaration ADT's obligation to pay Kurtz under the settlement agreement is independent of Kurtz's obligation to abide by the restrictive

covenants in the settlement agreement, and an order requiring ADT and McCarthy to pay Kurtz under the settlement agreement. We find ADT may not maintain its breach of contract claim against Kurtz and DSP seeking to avoid its obligation to pay Kurtz while at the same time affirming the settlement agreement and enforcing all of its terms.

## I. FACTS

This is the second time the parties are before us with regard to their business disputes.[1] The parties settled the prior litigation before Judge Heffley and signed a settlement agreement on April 27, 2015 ("Settlement Agreement"). *See* Defendants' Statement of Undisputed Facts at ¶1 ("DSUF") (ECF Doc. No. 32-2). Under the Settlement Agreement, ADT agreed to redeem Kurtz's ADT stock for $180,000 through an initial payment followed by monthly installments over two years. *See* Appendix ("A.") at 1a-7a.[2] The parties agreed Kurtz is only bound by

---

[1] In the prior litigation, ADT sued Kurtz and DSP alleging breach of Kurtz's employment agreement ("Employment Agreement") and for tortious interference with contractual relations. Kurtz counterclaimed for breach of a shareholders' agreement, violation of Pennsylvania's Wage Payment and Collection Law, and conspiracy. *Id.* Kurtz simultaneously filed a separate complaint against McCarthy and ADT alleging, *inter alia*, breach of fiduciary duty, breach of contract, minority shareholder oppression, violation of Pennsylvania's Wage Payment and Collection Law, unjust enrichment, and conspiracy. As a result of the Settlement Agreement, the issues in the prior litigation are no longer material. Further, the parties' arguments as to "dependent" clauses in the Settlement Agreement do not affect our finding ADT may not both enforce the Settlement Agreement and withhold performance as a matter of law. Accordingly, the issue is resolved as a matter of law and discovery into the nature of the consideration in the Settlement Agreement is not warranted. The only issue now remaining for trial is Defendants' alleged breach of the Settlement Agreement and damages resulting from any such breach.

[2] The Court's Policies require that a Statement of Undisputed Material Facts ("SUF") be filed in support of a Fed.R.Civ.P. 56 motion as well as an appendix of exhibits or affidavits. Defendants filed their SUF at ECF Doc. No. 32-2 and supporting Appendix at ECF Doc. No. 32-3. ADT responded to DSUF and, within that response, included "Additional Facts" at ECF Doc. No. 36. ADT submitted additional materials to Defendants' Appendix at ECF Doc. No. 35-3. Kurtz and DSP filed objections and responses to ADT's "Additional Facts" at ECF Doc. No. 38. References to the Appendix shall be referred to by Bates number, for example, "A. at 1a."

certain restrictive covenants in the Settlement Agreement. *Id.* The parties agreed to mutually release all claims as of the Settlement Agreement. *Id.*

ADT made the initial payment and the first two monthly installments under the Settlement Agreement. See Amended Complaint at ¶ 17 (ECF Doc. No. 29) ("Am. Compl."). Prior to the June 2015 installment payment, Kurtz posted a "block diagram" on DSP's website. *Id.* at ¶18. ADT alleges the "block diagram" constitutes "Confidential Information" defined in paragraph 2 of the Settlement Agreement, and alleges Kurtz's disclosure of the "block diagram" violates his obligations. *Id.* ADT also now alleges Kurtz is breaching the Settlement Agreement by using its source code or other confidential material. ADT stopped paying Kurtz and filed the instant complaint on July 22, 2015, later amended on August 27, 2015, alleging one count for breach of contract including seeking a declaration Kurtz and DSP "forfeited their right to all payments under and pursuant to the Settlement Agreement." *Id.* at *ad damnum* clause. ADT began escrowing Kurtz's monthly payments "as the result of Defendants' breaches of the Settlement Agreement and resultant irreparable harm" to it. *Id.* at ¶ 27.[3]

Kurtz answered with a counterclaim alleging breach of the Settlement Agreement in failing to make monthly payments. (ECF Doc. No. 18). Before we could decide whether he breached the Settlement Agreement by posting the "block diagram" on DSP's website or using ADT's source code or other confidential material, Kurtz moved for partial summary judgment on his counterclaim and on the portion of ADP's Amended Complaint seeking a declaration Kurtz and DSP forfeited their right to payment for Kurtz's ADT stock under the Settlement Agreement.

---

[3] With ADT's consent, we ordered it to maintain the escrowed payments in an interest bearing, segregated account, and provide Kurtz's counsel with an accounting of all payments. (ECF Doc. No. 28). Under today's accompanying Order, we release those funds to Kurtz.

## II. ANALYSIS

ADT stopped paying Kurtz under the Settlement Agreement while, at the same time, seeks to enforce all obligations in the Settlement Agreement. ADT explains its position:

- the parties agreed to a "global settlement of various disputes wherein all of the concessions, agreements and obligations were conditioned upon each other;" *See* ADT's Opposition at 8 (ECF Doc. No. 35-1);

- ADT "has not declared the Settlement Agreement terminated by reason" of Kurtz's alleged breach. *Id.* (emphasis in original). "To the contrary, Plaintiff ***expects that the parties will continue*** to abide by all of their respective concessions, agreements and obligations set forth" in the Settlement Agreement. *Id.* (emphasis added);

- ADT "has escrowed its monthly payment obligations, pursued a lawsuit for breach of contract and, seeks as one of its remedies the set off of the monies which it owes under the Settlement Agreement against its action damages and the fashioning of an equitable remedy absolving Adaptive Digital, in whole or in part, of its remaining financial obligations to Kurtz." *Id.* at 8-9;

- "Contrary to Defendants' assertion, Adaptive Digital is not seeking to terminate its obligations under the contract and still require defendants to perform their obligations. Adaptive Digital intends to fully comply with all of its numerous remaining concessions, agreements and obligations under the Settlement Agreement . . ." and is "merely asking the Court to fashion a damages remedy which alters or eliminates one of Adaptive Digital's numerous contractual commitments by reducing or eliminating Adaptive Digital's remaining financial obligation." *Id.* at 9 (emphasis in original); and

- ADT "continues to abide by its numerous, significant and substantial concessions, agreements and obligations under the Settlement Agreement. It is continuing to pay its monthly financial obligation into an escrow account (and is required to do the same during the pendency of this lawsuit) until the Court determines, following trial, the damages sustained by Adaptive Digital as a result of the Defendants' breaches of the Settlement Agreement and fashions an appropriate remedy." *Id.* at 13-14.

Under Pennsylvania law, the elements of a claim for breach of contract are: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *McCausland v. Wagner*, 78 A.3d 1093, 1101 (Pa. Super. 2013) (quoting *Hart v. Arnold*, 884 A.2d 316, 332 (Pa. Super. 2005)).

4

> When performance of a duty under a contract is due, any nonperformance is a breach. If a breach constitutes a material failure of performance, the non-breaching party is relieved from any obligation to perform; thus, a party who has materially breached a contract may not insist upon performance of the contract by the non-breaching party. Conversely, a party might breach the contract but still substantially perform its obligations under the agreement. *In that case, the breach is deemed nonmaterial and the contract remains in effect. The breaching party retains the right to enforce the contract and demand performance; the nonbreaching party has no right to suspend performance.*

*Id.* (citations omitted) (quotations omitted) (emphasis added); *see also Widmer Eng'g, Inc. v. Dufalla*, 837 A.2d 459, 467-68 (Pa. Super. 2003)) ("a material breach by one party to a contract entitles the non-breaching party to suspend performance"); *Oak Ridge Const. Co. v. Tolley*, 504 A.2d 1343, 1348 (Pa. Super. 1985) ("[i]f a breach constitutes a material failure of performance, then the non-breaching party is discharged from all liability under the contract").

Pennsylvania courts apply the Restatement (Second) of Contracts §241 (1981) to determine materiality.[4] *Widmer*, 837 A.2d at 468; *Int'l Diamond Imp., Ltd. v. Singularity Clark,*

---

[4] Section 241 of the Restatement provides:

> In determining whether a failure to render or to offer performance is material, the following circumstances are significant:
>
> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
>
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

5

*L.P.*, 40 A.3d 1261, 1271 (Pa. Super. 2012). Although neither party directly addresses the materiality of Kurtz's alleged breach, both assume the alleged breach is material. To support his position, Kurtz cites Williston on Contracts and case law addressing the legal import of a material failure of performance.[5] ADT's Amended Complaint and response brief characterizes Kurtz's alleged breach as "material."[6] We find no genuine factual dispute the parties consider Kurtz's alleged breach of the restrictive covenants as a material breach of the Settlement Agreement.[7]

---

        (e) the extent to which the behavior of the party failing to perform or to offer
        to perform comports with standards of good faith and fair dealing.

[5] For example, Kurtz cites 14 Williston on Contracts (4th Ed.) §43:15 addressing the effect of a "material failure of performance;" *Foliar Nutrients, Inc. v. Plant Food Systems, Inc.*, 2014 WL 3510594 (M.D. Fla. July 14, 2014) distinguishing options of non-breaching party to a settlement agreement where breaching party allegedly materially breached the contract; and *S & R Corp. v. Jiffy Lube Intern., Inc.*, 968 F.2d 371 (3d Cir. 1992), citing the effect of a material breach of contract on the non-breaching party ("*Jiffy Lube*").

[6] Kurtz's Amended Complaint alleges: "***Integral to [ADT's] agreement to execute the Settlement Agreement, and to make payments to Kurtz*** . . . is Kurtz's agreement to 'remain bound by the Non-Disclosure of Information clause in his Employment Agreement to the extent that he shall not disclose 'Confidential Information' and 'Business Related Information' as defined in this clause to any other person or entity.'" Am. Compl. at ¶ 14 (emphasis added). *See also* ADT's response brief explaining its request for the Court to relieve it of its remaining financial obligations to Kurtz where, "as in the present case with regard to breach of paragraph 2, ***the breach is material*** but the damages are difficult to quantify and irreparable." Response Brief at 4-5 (ECF Doc. No. 35-1) (emphasis added). In its affirmative defenses, ADT asserts "Defendants' claims are barred, in whole or in part, because they have first materially breached the non-disclosure and restrictive covenants of the Settlement Agreement." *See* ADT's Answer to Defendants' Counterclaim and Affirmative Defenses at 9 (ECF Doc. No. 55).

[7] Pennsylvania courts treat inquiries "into the materiality of a given breach as fact questions rather than questions of law to be decided from the bench." *Int'l Diamond Imp., Ltd.*, 40 A.2d at 1271 (citations omitted). Here, we find no genuine issue of fact as to the materiality of Kurtz's alleged breach.

When ADT discovered Kurtz's alleged breach, it had two options: (1) treat Kurtz's posting of the "block diagram" as a material breach acting to suspend its payment obligations and "assume the contract is avoided" or (2) "continue its own performance and sue for damages." *See Jiffy Lube*, 968 F.2d at 376; *see also*, 14 Williston on Contracts (4th) §43:15 (2013).[8] "Under no circumstances may the non-breaching party stop performance and continue to take advantage of the contract's benefits." *Jiffy Lube*, 968 F.2d at 376. In *McCausland, supra*, the Pennsylvania Superior Court found:

> In a breach of contract suit, the plaintiff *either* may rescind the contract and seek restitution *or* enforce the contract and recover damages based on expectation. In such a case, the inconsistent nature of those actions is obvious—one cannot attempt to terminate his contractual obligations and, at the same time, seek to enforce the contract and enjoy its full benefits in an action for breach.

*McCausland*, 78 A.3d at 1102 (quoting *Smith v. Brink*, 561 A.2d 1253, 1255 (Pa. Super. 1989)) (emphasis in original).

Here, ADT asserts Kurtz's posting of the "block diagram" on the DSP website is a material breach of the Settlement Agreement and ceased its payments to Kurtz while at the same time admittedly "not declar[ing] the Settlement Agreement terminated by reason" of Kurtz's

---

[8] Section 43:15 – "The effect of an election to proceed" – provides, in part:

When there has been a material failure of performance by one party to a contract, so that a condition precedent to the duty of the other party's performance has not occurred, the latter party has the choice to continue to perform under the contract or to cease to perform and conduct indicating an intention to continue the contract in effect will constitute a conclusive election, in effect waiving the right to assert that the breach discharged any obligation to perform. In other words, the general rule that one party's uncured, material failure of performance will suspend or discharge the other party's duty to perform does not apply when the latter party, with knowledge of the facts, either performs or indicates a willingness to do so, despite the breach, or insists that the defaulting party continue to render future performance.

(footnotes omitted).

alleged breach and "expects that the parties will continue to abide by" the Settlement Agreement. Pennsylvania law does not allow choosing both options.

ADT distinguishes *Jiffy Lube* as confined to the "peculiarities of franchise law and the specific contract terms at issue." *See* ADT response at 13 (ECF Doc. No. 35-1). ADT asserts it continues to abide by its obligations under the Settlement Agreement, including monthly payments to Kurtz, by making those payments into an escrow account. Although it argues *Jiffy Lube* inapposite, ADT cites it for support of its position that by making payments into the escrow account, it continues to abide by its obligations under the Settlement Agreement. *Jiffy Lube* does not support ADT's position.

In *Jiffy Lube*, the defendant franchisee failed to pay royalties to Jiffy Lube, and Jiffy Lube instituted termination proceedings. *Jiffy Lube*, 968 F.2d at 373-74. After the district court denied defendant franchisee's preliminary injunction seeking to prevent the terminations, Jiffy Lube terminated the franchises for failure to pay royalties. *Id.* The defendant franchisee continued to operate service centers under the Jiffy Lube mark, claiming the terminations improper. *Id.* Jiffy Lube then moved for preliminary injunction seeking to prevent the defendant franchisee from further use of the Jiffy Lube trademark. *Id.* The district court denied the preliminary injunction, finding the termination dispute between the parties precluded injunctive relief, and ordered defendant to pay royalties into escrow until the termination dispute resolved. *Id.*

> The Third Circuit reversed the district court, finding:
>
> [Franchisee] has done exactly what contract law forbids. Feeling that Jiffy Lube had violated its duty to him, [Franchisee] stopped making royalty payments, but he continued to operate the service centers under the Jiffy Lube name.
>
> [Franchisee] did not pay royalties; Jiffy Lube gave [Franchisee] 60 days to cure the default, and when [Franchisee] did not respond the franchises were

> terminated. . . . [Franchisee] may still have a legitimate claim for damages, but he does not have the right to continue using the trademark as an infringer.

*Id.* at 377-78.

The Third Circuit found "this conclusion proper even though [Franchisee] is currently paying royalties into escrow by order of the district court." *Id.* at 378 n.8. *Jiffy Lube* does not support ADT's payments into an escrow account satisfies its contractual obligations. The Settlement Agreement requires payment to Kurtz, not into escrow. Our August 24, 2015 Order only maintained the status quo until we could review the parties' submissions.

ADT additionally argues it is not seeking to terminate its obligations under the Settlement Agreement while still requiring Kurtz and DSP to perform their obligations, and intends to "fully comply with all of its numerous remaining obligations." *See* ADT response at 9 (ECF Doc. No. 35-1). According to ADT, it "is merely asking the Court to fashion a damages remedy which alters or eliminates one of [its] numerous contractual commitments by reducing or eliminating [its] remaining financial obligations." *Id.* This relief, according to ADT, "is akin to a setoff claim," analogizing to a landlord-tenant dispute in *Pugh v. Holmes*, 405 A.2d 897 (Pa. 1979). In *Pugh*, the Pennsylvania Supreme Court held where a tenant remains in possession of the premises, and the landlord sues for unpaid rent, the implied warranty of habitability may be asserted as a *defense* by the tenant to the landlord's action. *Pugh*, 405 A.2d at 907. Thus, if the landlord breached the implied warranty of habitability, the tenant's obligation to pay rent is abated. *Id.* *Pugh* does not support ADT's position it may, on its own, simply cease meeting its contractual obligations. To the extent *Pugh* addressed "set off," it arose in the context of the tenant's deduction cost of repair of a broken door lock from her rent. *Id.* "[W]here a landlord fails to perform a lease covenant, the tenant may perform it at his own expense (if reasonable)

and deduct the cost of his performance from the amount of rent due and payable." *Id. Pugh* does not support ADT's argument.

## III. CONCLUSION

ADT cannot enforce the Settlement Agreement and fail to honor its obligations under the same agreement. If we determine Kurtz breached the restrictive covenants in the Settlement Agreement, ADT may be entitled to damages. It may not, however, self-help by withholding payments owed to Kurtz under an agreement it wants to enforce in all other ways. Accordingly, we grant Defendants' motion for partial summary judgment and order Plaintiff to pay the funds owing to Defendants under the Settlement Agreement both from the escrow and continuing until further order.